# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JONA KIPKORIR BIWOT,
                                    *Petitioner,*

                v.

ALBERTO GONZALES, Attorney
General,
                                    *Respondent.*

No. 03-71456

Agency No.
A79-812-262

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 16, 2005—Seattle, Washington

Filed April 14, 2005

Before: Betty Binns Fletcher, M. Margaret McKeown, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge McKeown

## COUNSEL

Ryan P. McBride, Heller Ehrman White & McAuliffe, Seattle, Washington, for the petitioner.

Michele Y. F. Sarko and Virginia M. Lum, United States Department of Justice, Office of Immigration Litigation, Civil Division, Washington, DC, for the respondent.

## OPINION

McKEOWN, Circuit Judge:

Jona Kipkorir Biwot ("Biwot") petitions for review of a Board of Immigration Appeals ("BIA") order dismissing his appeal from an order of removal. The issue we address is whether Biwot was denied his right to counsel when the Immigration Judge ("IJ") allowed Biwot, who was incarcerated and diligently seeking representation, only five working days to obtain counsel. We conclude that Biwot was denied his statutory right to counsel and, accordingly, we grant the petition in part and remand to the BIA with instructions to remand to the IJ.

### BACKGROUND

Biwot, a citizen of Kenya, came to the United States on a non-immigrant student visa in 1996 after winning a full scholarship to attend Northwest College in Kirkland, Washington.

In 1999, while he was still a student, Biwot was involved in a dormitory brawl that resulted in a conviction for third-degree assault. The conviction prompted the former Immigration and Naturalization Service ("INS") to charge Biwot with failure to maintain his student status.[1]

At his first removal hearing, on July 3, 2002, Biwot appeared without counsel. When Biwot stated that he wanted to obtain free representation, the IJ provided him with a list of legal service providers and continued the hearing until July 9, 2002. On the day of the first hearing, Biwot was transferred from one detention facility to another, which made it difficult for him to contact the lawyers on the list. Biwot's efforts to find an attorney were further frustrated because the following day was Thursday, July 4, a national holiday. This quirk of timing left Biwot with only two business days—Friday, July 5, and Monday, July 8—to obtain an attorney before the next hearing.

Biwot was unable to find an attorney before the second hearing. He explained that he tried to get a lawyer, but the legal service providers told him that the application process took a week or two. Biwot asked the IJ for another two weeks, but the IJ responded that he thought two weeks was excessive and that he would continue the hearing until July 15, 2002.

On July 15, Biwot again appeared without counsel. The IJ asked why Biwot did not have an attorney and Biwot said: "Your Honor, I went back. I had written down the notice immigration on my paper work. I talked to them about it and they told me I'm supposed to put a name of lawyer." The IJ informed Biwot that the paperwork he had been filling out was only for petitioners who already had lawyers. He then said, "but if you're looking for [a lawyer], okay. Well, you are going to have to speak for yourself. You can continue your

---

[1]The INS also charged Biwot with overstaying his visa, but that charge was dropped.

efforts to find an attorney, but we're going to have to go ahead and take pleading on the [Notice to Appear]."

The IJ immediately began to question Biwot, who presented no evidence other than his responses to the IJ's inquiries. The IJ determined that Biwot was removable and ineligible for any relief. After announcing his ruling, the IJ told Biwot that he could accept the decision as final or he could appeal. Biwot said, "Your Honor, I accept the decision as final because I cannot do anything right now."

Biwot later appealed to the BIA. In his Notice of Appeal, he alleged that "During my case hearing I never had a legal representative because I was detained and took several days to contact family. I didnt [sic] know how my constitutional rights were conducted [sic]." After he filed his appeal, Biwot wrote a letter informing the BIA that he had decided to apply for asylum and asking for his case to be sent back to him so he could work on his asylum application. When the BIA did not respond, Biwot sent a second letter inquiring about the status of the first letter. The BIA ignored both letters and dismissed the appeal on the ground that it lacked jurisdiction as a result of Biwot's statement that he would not appeal.

Biwot now petitions for review not only of the dismissal of his appeal but of the BIA's handling of his letters and consideration of the merits of his claims for relief. We address only the BIA's dismissal of his appeal and the related claim of denial of counsel.

## DISCUSSION

### I.  JURISDICTION

As a threshold matter, we consider whether we have jurisdiction to address Biwot's claim that he was denied the right to counsel. The government contends that we do not because

Biwot failed to exhaust his administrative remedies. We disagree.

Although we may not review a final order of removal unless an alien has exhausted all administrative remedies, 8 U.S.C. § 1252(d)(1), *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004), Biwot raised the claim of denial of counsel during the administrative process. He consistently asked the IJ for a reasonable extension to obtain counsel. Biwot's Notice of Appeal to the BIA stated, "During my case hearing I never had a legal representative because I was detained and took several days to contact family. I didnt [sic] know how my constitutional rights were conducted." The Notice of Appeal not only identified as an error Biwot's lack of representation, but it also alluded to the reason he was unable to obtain a lawyer—lack of time. Because Biwot was pro se at the time, we liberally construe his appeal, *Barron*, 358 F.3d at 676 n.4, and conclude that the Notice of Appeal sufficiently preserved the denial of counsel claim.

The basis of the BIA's decision raises a second potential barrier to our review. The BIA held that it lacked jurisdiction because Biwot waived his right to appeal. *See* 8 C.F.R. § 1003.3(a)(1) ("A Notice of Appeal may not be filed by any party who has waived appeal . . . ."); 8 C.F.R. § 1003.39 ("[T]he decision of the [IJ] becomes final upon waiver of appeal . . . ."). Although the BIA is certainly correct in a semantic sense, simply concluding that Biwot "waived" his appeal begs the question whether the waiver was valid.

[1] A waiver of the right to appeal a removal order must be "considered and intelligent" or it constitutes a deprivation of the right to appeal and thus of the right to a meaningful opportunity for judicial review. *United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004) (quoting *United States v. Leon-Paz*, 340 F.3d 1003, 1005 (9th Cir. 2003). Biwot's statement that he would not appeal can hardly be characterized as considered and intelligent. His comment that he was

accepting the IJ's decision because he could "not do anything right now" reveals a fundamental misunderstanding of the effect of a waiver of appeal. Biwot was the victim of a double disadvantage—he was under the misapprehension that he had no choice but to waive his appeal and he labored under that cloud because he had been denied counsel. Surely an attorney would have disabused Biwot of any misconceptions about the conclusive effect of his statement. Because the waiver of appeal was not knowing and considered, the waiver does not strip us of jurisdiction.

## II. Denial of the Right to Counsel

**[2]** The right to counsel in immigration proceedings is rooted in the Due Process Clause and codified at 8 U.S.C. § 1362 and 8 U.S.C. § 1229a(b)(4)(A). *See Baltazar-Alcazar v. INS*, 386 F.3d 940, 944 (9th Cir. 2004); *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) ("Although there is no Sixth Amendment right to counsel in an immigration hearing, Congress has recognized it among the rights stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject of removal proceedings."). The regulations that effectuate the right to counsel provide that "[t]he alien may be represented in proceedings before an [IJ] by an attorney or other representative of his or her choice." 8 C.F.R. § 1003.16(b).

**[3]** The Supreme Court has long recognized that because deportation "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom[,] . . . [m]eticulous care must be exercised lest the procedure by which [an alien] is deprived of that liberty not meet the essential standards of fairness." *Bridges v. Wixon*, 326 U.S. 135, 154 (1945). One way we ensure that the "standards of fairness" are met is by guaranteeing that aliens have the opportunity to be represented by counsel. The high stakes of a removal proceeding and the maze of immigration rules and regulations make evident the necessity of the right to

counsel. The proliferation of immigration laws and regulations has aptly been called a labyrinth that only a lawyer could navigate. *Castro-O'Ryan v. INS*, 847 F.2d 1307, 1312 (9th Cir. 1988).

**[4]** To infuse the critical right to counsel with meaning, we have held that IJs must provide aliens with reasonable time to locate counsel and permit counsel to prepare for the hearing. *Rios-Berrios v. INS*, 776 F.2d 859, 862-63 (9th Cir. 1985). Absent a showing of clear abuse, we typically do not disturb an IJ's discretionary decision not to continue a hearing. Nonetheless, we cannot allow a "myopic insistence upon expeditiousness" to render the right to counsel "an empty formality." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

No bright line guides our consideration of what constitutes reasonable time. The inquiry is fact-specific and thus varies from case to case. We pay particular attention to the realistic time necessary to obtain counsel; the time frame of the requests for counsel; the number of continuances; any barriers that frustrated a petitioner's efforts to obtain counsel, such as being incarcerated or an inability to speak English; and whether the petitioner appears to be delaying in bad faith.

**[5]** In *Rios-Berrios*, we recognized that the petitioner's attempts to secure a lawyer were hampered by his incarceration, lack of English skills, and unfamiliarity with this country. 776 F.2d at 862-63. As if that were not enough, Rios-Berrios had been moved over 3,000 miles from the only person he knew in this country who might have helped him find a lawyer. *Id.* Under these difficult circumstances, we held that the IJ abused his discretion by granting only two continuances amounting to two working days. *Id.* at 862.

**[6]** Biwot's situation is comparable to the predicament faced by Rios-Berrios. Both petitioners were incarcerated during the time they tried to obtain counsel, a condition that increases the difficulty of contacting prospective attorneys.

Both were given remarkably short periods of time to seek lawyers: a total of two business days for Rios-Berrios and five for Biwot.

We recognize that Biwot had advantages—such as a basic, albeit certainly not fluent, knowledge of English and familiarity with this country—that on the surface enhanced his ability to obtain a lawyer. But these advantages were of little value when circumscribed by an unrealistically short time to secure counsel. The first continuance, which ironically was during the Fourth of July holiday, was essentially meaningless in terms of the practical ability to engage an attorney. Forcing an incarcerated alien to find a lawyer over a holiday weekend is an unreasonable burden.

**[7]** The second continuance, which was six days, provided little practical relief. Biwot appeared at the second hearing on Tuesday, July 9. The continuance meant that he had only three business days—Wednesday to Friday—to find an attorney to appear at the hearing on Monday, July 15. With telephone tag, tight schedules, and impending deadlines, trying to secure an attorney during this time period would be difficult enough for an ordinary party. That Biwot was an incarcerated immigrant compounded those circumstances and made obtaining an attorney all but impossible in such a short interval.

**[8]** Despite the difficulty of securing an attorney so quickly, Biwot was as diligent in his attempts to procure representation as a petitioner in his shoes could be. He twice contacted free legal service providers and was in the midst of working with them to process his request. But the IJ did nothing to acknowledge Biwot's efforts. Although Biwot was not trying to delay his hearing inordinately—he requested a continuance of only two weeks—the IJ refused his request. Nor is this case one in which continuing the hearing would have been futile or in which the IJ had done everything he reasonably could to permit Biwot to obtain counsel. *See Vides-Vides v. INS*,

783 F.2d 1463, 1469-70 (9th Cir. 1986) (petitioner's failure to obtain counsel after four months and two continuances made apparent that he was unable to secure counsel at his own expense). Far from being futile, the record before the IJ made apparent that a realistic continuance was warranted to allow Biwot to obtain an attorney. Under these circumstances, denial of a continuance was an abuse of discretion because it was tantamount to denial of counsel.

Biwot's denial of counsel is not cured by a purported waiver of the right. We have reiterated many times that an alien cannot appear pro se without a knowing and voluntary waiver of the right to counsel. *See, e.g.*, *Velasquez Espinosa v. INS*, 404 F.2d 544, 546 (9th Cir. 1968); *Tawadrus*, 364 F.3d at 1103. A waiver is generally not valid unless the IJ expressly asks the petitioner whether he wishes to continue without a lawyer and receives a "knowing and voluntary affirmative response." *Tawadrus*, 364 F.3d at 1103. If the petitioner does not affirmatively waive his right to counsel, the IJ must inquire whether there is good cause to grant petitioner more time to obtain counsel. *Reyes-Palacios v. INS*, 836 F.2d 1154, 1155-56 (9th Cir. 1988) (per curiam).

**[9]** At the final hearing, the IJ issued a confounding directive: He told Biwot that he must plead and speak for himself, but Biwot could continue seeking an attorney. The IJ neither asked Biwot whether he wished to proceed without an attorney nor determined whether there was good cause to grant Biwot more time to obtain counsel. Biwot's compliance with the IJ's exhortation to proceed on his own can hardly be viewed as an effective waiver. *See Colindres-Aguilar v. INS*, 819 F.2d 259, 261 (9th Cir. 1987) (holding that when the record indicates a petitioner's desire for counsel, the IJ cannot assume that his silence implies a waiver of his right to representation). Although IJs may not be required to undertake Herculean efforts to afford the right to counsel, at a minimum they must inquire whether the petitioner wishes counsel, determine a reasonable period for obtaining counsel, and

assess whether any waiver of counsel is knowing and voluntary. These fundamental steps are absent in Biwot's case.

## III.  P**REJUDICE** A**NALYSIS**

**[10]** Because Biwot was prejudiced by the denial of counsel, we again leave unanswered the question whether a petitioner must show prejudice when he has been denied the right to counsel in removal proceedings. *See Baltazar-Alcazar*, 386 F.3d at 947 (collecting Ninth Circuit cases that demonstrate the unsettled nature of the prejudice inquiry). To establish prejudice, Biwot must show only that his rights were violated "in a manner so as potentially to affect the outcome of the proceedings." *Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999) (quoting *United States v. Cerda-Pena*, 799 F.2d 1374, 1379 (9th Cir. 1986)). Biwot easily clears this hurdle. With an attorney, he would not have been forced to proceed pro se, to present a case with no evidence, to answer the IJ's inquiries without any idea of their legal significance, or to purport unwittingly to waive his appeal.

Biwot requested that we address the merits of his claims for asylum and withholding of removal and consider the procedural posture of the letters he submitted to the BIA. We decline his invitation. In Biwot's letters to the BIA, he sought remand of his case to the IJ, which is the very outcome of our decision, albeit on different grounds. As to the merits of his claims for relief, we believe the best course is to permit the agency to consider in the first instance the procedural and substantive aspects of Biwot's claims.

**[11]** We **GRANT** the petition as to the denial of counsel claim and **REMAND** with instructions to remand to the IJ to provide Biwot with reasonable time to obtain counsel, to present evidence, and to make such claims as are available. We **DISMISS** the petition as to the claims for review of Biwot's letters to the BIA and for consideration of the application for relief.