**HUNG KEI LEUNG, Petitioner,**

v.

**Alberto R. GONZALES, United States Attorney General, Respondent.**

No. 03–74677.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2007.

Filed April 19, 2007.

Amos Lawrence, Esq., San Francisco, CA, for Petitioner.

Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Christopher C. Fuller, Linda S. Wernery, Esq., William C. Minick, Esq., U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: GOULD and RAWLINSON, Circuit Judges, and COVELLO,* District Judge.

### MEMORANDUM **

This is an appeal from an order of the Board of Immigration Appeals ("BIA"). The appeal is brought pursuant to 8 U.S.C.

---

* The Honorable Alfred V. Covello, Senior United States District Judge for the District of Connecticut, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

1. 8 U.S.C. § 1252(a)(1) provides that "[j]udicial review of a final order of removal ... is governed only by chapter 158 of title 28 of the United States Code," which in turn provides that "[a]ny party aggrieved by the final order may ... file a petition to review the order in the court of appeals...." 28 U.S.C. § 2344.

2. Under the former § 212(c) of the Immigration and Nationality Act ("INA"), "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be

§ 1252.[1] The petitioner-appellant, Hung Kei Leung, contends that the BIA erred when it affirmed and adopted an immigration judge's order that rejected Leung's application to the Attorney General for relief from deportation, and denied his motion for a continuance.

The issues presented are: 1) whether the limitations on aggravated felons seeking § 212(c) relief from deportation apply to Leung;[2] and 2) whether the immigration judge denied Leung his right to counsel when she denied his request for a continuance to secure the services of an attorney.

For the reasons set forth hereinafter, we AFFIRM the decision of the BIA.

### FACTS

A review of the administrative record reveals the following undisputed material facts.

On August 4, 1965, Leung was born in Hong Kong. On October 16, 1977, immigration officials admitted him to the United States as a lawful permanent resident. He has lived in this country ever since. On November 15, 1985, Leung pleaded

---

admitted in the discretion of the Attorney General.... The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years." 8 U.S.C. § 1182(c) (repealed in 1996). "Despite the fact that this section literally applies only in exclusion proceedings, we have held that equal protection requires that § 212(c) relief also be available in deportation proceedings." *Tapia–Acuna v. INS*, 640 F.2d 223, 224 (9th Cir.1981). Further, we have held that § 212(c) relief from deportation is generally still available to aliens whose deportation proceedings began before Congress repealed § 212(c) in 1996. *See Magana–Pizano v. INS*, 200 F.3d 603, 611 (9th Cir.1999).

guilty in California superior court to a charge of burglary. The court sentenced him to a term of imprisonment of two years. On April 29, 1987, Leung again pleaded guilty in California superior court to a charge of burglary. The court sentenced him to a further term of imprisonment of five years.

On November 22, 1989, the former Immigration and Naturalization Service served Leung with a notice to appear before an immigration judge to show cause as to why he should not be subject to deportation. The basis of the proposed deportation was that Leung stood convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.[3]

On October 29, 1990, a California superior court jury found Leung guilty of three counts of robbery. The court sentenced him to fifteen years and eight months of imprisonment.

On August 24, 1999, deportation proceedings resumed when Leung appeared before the immigration judge, and denied that he was subject to deportation. On May 22, 2000, the immigration judge concluded that Leung was deportable, as an alien convicted of two crimes of moral turpitude, namely, his 1985 and 1987 burglary convictions.

On May 8, 2001, Leung filed with the immigration judge an application for relief from deportation, pursuant to the former INA § 212(c).[4] On September 4, 2001, the immigration judge concluded that Leung was not entitled to § 212(c) relief from deportation, because he was an alien who had been convicted of one or more aggravated felonies and had served for such felonies a term of imprisonment of at least five years. Consequently, as relief from deportation was not available, the immigration judge concluded that Leung was still subject to deportation because he was an alien convicted of two crimes of moral turpitude. The immigration judge continued the matter, however, until April 24, 2002.

On March 19, 2002, Leung's attorney moved to withdraw as counsel of record, representing that Leung "has failed to meet his obligations to this office and has not responded to communications from this office." Counsel noted that he had updated Leung as to the time and place of his next scheduled hearing, explained that the results of that hearing might include a deportation order, and provided him with a list of free legal service providers. On April 10, 2002, the immigration judge granted counsel's motion to withdraw.

On April 24, 2002, Leung appeared before the immigration judge without counsel. He indicated that his communication problems with his former counsel arose in part because of a problem with the postal system, but also because he owed his attorney money. Specifically, he represent-

---

3. Pursuant to the former INA § 241(a)(4), "[a]ny alien in the United States ... shall, upon the order of the Attorney General, be deported who ... at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct...." 8 U.S.C. § 1251(a)(4) (repealed in 1996).

4. Pursuant to the former INA § 212(c), "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General.... The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years." 8 U.S.C. § 1182(c) (repealed in 1996).

ed that he owed his attorney $4000, which he hoped to pay in order to again secure his services. He sought a continuance, indicating that although he was presently working part-time while attending school, he would be finishing school in June, 2002, and would then be working full-time. The government objected to the request for a continuance.

Noting that "this matter has been pending for 14 years," and that "a continuance does not appear likely to affect the outcome of this case in any material way . . .", the immigration judge denied Leung's request for a continuance. Further, the judge incorporated her rulings from the previous hearings in this matter, and ordered that Leung be removed to the United Kingdom.

On May 9, 2002, Leung filed a timely notice of appeal. On December 1, 2003, the Board of Immigration Appeals ("BIA") adopted and affirmed the decision of the immigration judge. Further, the BIA concluded that the immigration judge's denial of a continuance was not error, because: 1) Leung never indicated that he was seeking a new attorney; 2) Leung requested an indefinite continuance until some unknown time in the future when he could earn enough money to pay his former counsel; 3) he admitted that he had cut off contact with his former counsel; 4) he spoke English; and 5) he was not in custody.

On December 22, 2003, Leung filed with this court a timely petition for review of the BIA's final order of deportation.

## STANDARD OF REVIEW

"The BIA's interpretation and application of immigration laws is generally entitled to deference." *Albillo–De Leon v. Gonzales,* 410 F.3d 1090, 1095 (9th Cir. 2005) (citing *Simeonov v. Ashcroft,* 371 F.3d 532, 535 (9th Cir.2004)). Nevertheless, the court is "not obligated to accept an interpretation that is demonstrably irrational or clearly contrary to the plain and sensible meaning of the immigration laws." *Albillo–De Leon,* 410 F.3d at 1095 (citing *e.g. Jahed v. INS,* 356 F.3d 991, 997 (9th Cir.2004)).

"Claims of due process violations in removal proceedings are reviewed de novo." *Lopez–Umanzor v. Gonzales,* 405 F.3d 1049, 1053 (9th Cir.2005). A denial of a request for a continuance is reviewed for abuse of discretion. *See Biwot v. Gonzales,* 403 F.3d 1094, 1099 (9th Cir.2005).

## DISCUSSION

### I. The Availability of INA § 212(c) Relief from Deportation

Leung first argues that he "remains eligible for § 212(c) relief [from deportation] since all his criminal convictions occurred prior to the effective [date] of the Immigration Act of 1990." Specifically, he contends that because "Congress did not prescribe an effective date for this new preclusion from 212(c) relief" the court should apply the presumption that "this legislation applies prospectively only."

The government responds that this court has previously rejected the argument advanced by Leung. Specifically, in "*Samaniego–Meraz v. INS,* [53 F.3d 254, 256 (9th Cir.1995),] this court already determined that [the Immigration Act of 1990] operates retroactively and applies to pre-enactment convictions such as Leung's. . . ."

On November 29, 1990, Congress eliminated § 212(c) relief from deportation for any "alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years" by enact-

ing the Immigration Act of 1990 ("IM-MACT").[5]

IMMACT § 511(b) provided that this limitation on aggravated felons seeking § 212(c) relief from deportation "shall apply to admissions occurring after the date of the enactment of this Act." In this context, the term "admissions" refers to applications for § 212(c) relief. *See* 56 Fed.Reg. 50033311 (Oct. 3, 1991) (amending 8 C.F.R. § 212). As such, Congress was clear that the limitations on aggravated felons seeking § 212(c) relief from deportation applied to applications filed after IMMACT's enactment on November 29, 1990. Congress did not specify, however, what effect an aggravated felony conviction that predated the enactment of IM-MACT would have on an application for § 212(c) relief.

■ Over a decade ago, this court held that the limitations on aggravated felons seeking § 212(c) relief from deportation apply to applicants who were convicted before IMMACT's enactment. *Samaniego-Meraz v. INS*, 53 F.3d 254, 256 (9th Cir.1995) *overruled on other grounds, in part, by Toia v. Fasano*, 334 F.3d 917 (9th Cir.2003). The *Samaniego-Meraz* court concluded that Congress intended IM-MACT to apply "regardless of the date of the underlying conviction" and that "application of § 212(c) to pre-enactment convictions is not a retroactive application of the statute." *Samaniego-Meraz v. INS*, 53 F.3d 254, 256 (9th Cir.1995). We therefore

reject Leung's argument that IMMACT does not apply to him because his convictions preceded that statute's enactment.[6]

Leung next argues that this court's holding in *Samaniego-Meraz* does not control here, because that case concerned an alien convicted of a crime that constituted an aggravated felony under the original definition of that term. He distinguishes his case from *Samaniego-Meraz* by noting that it is only the amended definition of aggravated felony that includes the crimes of which he has been convicted, specifically, robbery and burglary, while the original definition of aggravated felony did not include those crimes.

The government responds that this distinction is immaterial. Specifically, because the amended definition of aggravated felony "applies regardless of whether the conviction was entered before, on, or after" the enactment of the new definition, "Leung's argument must fail."

Leung is correct that initially, the holding in *Samaniego-Meraz v. INS* did not apply in those cases in which aliens were convicted of crimes that were not designated as aggravated felonies under the original definition of that term. *See Samaniego-Meraz v. INS*, 53 F.3d 254, 257 (9th Cir.1995) (deferring to the BIA's decision in *In re A-A-*, 20 I. & N. Dec. 492 (BIA 1992)). This exception was necessary because when Congress expanded the definition of aggravated felony to include

---

**5.** Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978 (1990) *as amended by* the Miscellaneous and Technical Immigration and Naturalization Amendments § 306(a)(10), Pub.L. 102–232, 105 Stat. 1733, 1751 (1991).

**6.** It is significant that Leung's convictions for robbery were the result of a trial, rather than a guilty plea. In *Toia v. Fasano*, 334 F.3d 917 (9th Cir.2003), this court held that IMMACT's limitations on § 212(c) relief from deportation do not apply to individuals who pleaded

guilty to an aggravated felony before IM-MACT's enactment. *Id.* at 918. In so holding, the court was explicit that it was only overruling *Samaniego-Meraz* "[t]o the extent that [it] conflicts with our ruling today." *Toia*, 334 F.3d at 921. The court was clear to limit its decision to "[a]liens who pleaded guilty prior to the enactment of IM-MACT...." *Id.* Accordingly, because Leung was convicted by a jury of an aggravated felony, *Toia* is not applicable to this case.

"crimes of violence" in 1990, and "theft crimes" in 1994, the relevant statutes restricted the applicability of the expanded definitions to those crimes occurring after the effective dates of the statutes.[7] Thereinafter, the BIA and the courts established precedent dealing with these divergent definitions and their dates of applicability. *See, e.g., In re A–A–,* 20 I. & N. Dec. 492 (BIA 1992).

■ The exception to the applicability of *Samaniego–Meraz v. INS* was abrogated, however, when Congress itself did away with the dates of applicability for the term aggravated felony by enacting § 321(b) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA").[8] Pursuant to IIRIRA, "[n]otwithstanding any other provision of law (including any effective date), the term [aggravated felony] applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph." 8 U.S.C. § 1101(a)(43). As such, because the applicability of the term aggravated felony is no longer constrained by a date of enactment, IMMACT's limitations on § 212(c) relief from deportation now apply without regard to the date of an alien's felony conviction.

In the face of IIRIRA's unequivocal language, Leung's contention that the dates of his convictions are somehow material is unavailing. As the BIA has properly noted: "With the IIRIRA, . . . Congress made clear its intention to do away with the different effective dates and to establish an aggravated felony definition that would be universally applied, regardless of the date of conviction." *In re Truong,* 22 I. & N. Dec. 1090, 1095 (BIA 1999) (en

banc); *see also INS v. St. Cyr,* 533 U.S. 289, 318–19, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (citing the passage of IIRIRA § 321 as an instance in which Congress "indicate[d] unambiguously its intention to apply specific provisions retroactively"); *Aragon–Ayon v. INS,* 206 F.3d 847, 851 (9th Cir.2000) (stating that "[t]he crucial question, is whether Congress has clearly manifested an intent for the amended definition of aggravated felony to apply retroactively. The answer is yes."); *Valderrama–Fonseca v. INS,* 116 F.3d 853, 856 (9th Cir.1997) (holding that "it is clear that it doesn't matter when the conviction occurred if the IIRIRA 'aggravated felony' amendments apply").

■ Accordingly, in Leung's case, both IIRIRA's definition of aggravated felony and IMMACT's limitations on the availability of § 212(c) relief from deportation apply. Therefore, because Leung has been convicted by a jury of an aggravated felony and has served for that felony a term of imprisonment of at least five years, we affirm the BIA's determination that Leung is ineligible for § 212(c) relief from deportation.

## II. The Right to Counsel at Immigration Proceedings

■ Leung next argues that the immigration judge denied him his right to counsel by refusing to grant a continuance in order to permit him to retain an attorney.

The government responds that the immigration judge neither violated Leung's "due process right to counsel, . . . [nor] abuse[d] her discretion in declining to grant a continuance."

---

7. *See* IMMACT § 501(a), Pub.L. No. 101–649, 104 Stat. 4978 (1990); Immigration and National Technical Corrections Act § 222(a), Pub.L. No. 103–416, 108 Stat. 4305, 4322 (1994).

8. *See* IIRIRA § 321(b), Pub.L. No. 104–208, 110 Stat. 3009–627 (1996) *codified at* 8 U.S.C. § 1101(a)(43).

Aliens have a statutory right to be represented by counsel when appearing at removal proceedings. 8 U.S.C. §§ 1229a(b)(4)(A), 1362. This court has construed this right as requiring immigration judges to "provide aliens with reasonable time to locate counsel and permit counsel to prepare for the hearing." *Biwot v. Gonzales*, 403 F.3d 1094, 1098–99 (9th Cir.2005) (citing *Rios–Berrios v. INS*, 776 F.2d 859, 862–63 (9th Cir.1985)). Determining whether an alien has been afforded reasonable time requires a fact specific inquiry, "and thus varies from case to case." *Biwot*, 403 F.3d at 1099.

In the present case, the immigration judge did not deny Leung his right to counsel, because the judge afforded him reasonable time to retain an attorney and to prepare for the one hearing at which Leung appeared without counsel. With respect to this single instance in fourteen years of proceedings, Leung had seven months notice as to where and when the government was to convene that final hearing. He has admitted that during those seven months he broke off contact with his attorney. Over a month before that hearing, his attorney moved to withdraw as counsel of record. But before his attorney did so, he reminded Leung of the time, place, and stakes of the hearing. Further, Leung's attorney provided him with a list of free legal service providers. There is nothing in the record to indicate that Leung objected to his attorney's motion to withdraw.

When his counsel withdrew, Leung faced no obvious barriers to finding counsel. Leung was educated in the United States. He has family here. He speaks English. He was employed. He was not in custody. As a thrice convicted felon, and as an individual involved in this deportation matter for some fourteen years, Leung was presumably familiar with both the nature of the proceedings and the value of being represented by counsel. Nevertheless, in the month after his attorney moved to withdraw, he did not find alternate counsel, and there is nothing in the record indicating that he attempted to do so.

Nor is there any indication that, prior to the hearing, he sought a continuance to secure counsel. To the contrary, it was only at the final hearing itself that he asked for a delay. And rather than requesting a continuance of a sensible duration, Leung asserted that his plan was to finish school, begin working full-time, save enough money to reacquire the services of his former attorney, and then resume the proceedings.

We conclude that, under such circumstances, Leung had sufficient time in which to secure counsel.[9] Therefore, the denial of the motion to continue was not a denial of due process, but rather a matter within the immigration judge's sound discretion.

"Absent a showing of clear abuse, we typically do not disturb an IJ's discretionary decision not to continue a hearing." *Biwot v. Gonzales*, 403 F.3d 1094, 1099

---

**9.** This case is readily distinguishable from those cases in which an immigration judge unlawfully permitted an alien to appear pro se without first determining whether the alien had validly waived his right to counsel. *See Hernandez–Gil v. Gonzales*, 476 F.3d 803 (9th Cir.2007) (granting a petition for review where an alien did not knowingly and voluntarily waive his right to counsel). Specifically, the issue in this case is not whether there was a waiver of the right to counsel, valid or otherwise. Rather, the issue is whether the immigration judge satisfied Leung's right to counsel by affording him reasonable time in which to secure counsel. Notably, Leung has not raised the argument that the immigration judge unlawfully accepted an invalid waiver of his right to counsel, nor does the government contend that he waived his right to counsel.

(9th Cir.2005). Because Leung has failed to show that the immigration judge clearly abused her discretion, it was neither error for the immigration judge to deny the request for a continuance, nor for the BIA to affirm that decision.

**AFFIRMED.**

RAWLINSON, Circuit Judge, concurring:

I concur in the result denying the petition for review.