**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE LUIS MONTOYA GOMEZ, | No. 24-3242 |
| Petitioner, | Agency No. A093-216-846 |
| v. | |
| PAMELA BONDI, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 3, 2025
Pasadena, California

Before: GILMAN,** M. SMITH, and VANDYKE, Circuit Judges.

Petitioner Jose Luis Montoya Gomez seeks review of a Board of

Immigration Appeals (BIA) decision affirming a decision by an Immigration Judge

(IJ) denying his applications for asylum, withholding of removal, and Convention

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Ronald Lee Gilman, United States Circuit Judge for the Court of Appeals, 6th Circuit, sitting by designation.

Against Torture (CAT) relief.[1]  We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

1.  Petitioner argues that the BIA failed to rule on his motions to remand his case to the IJ.  Petitioner is incorrect.  The BIA concluded that "remanded proceedings are not warranted for the Immigration Judge to further consider his applications for relief from removal" because Petitioner "has not established that the outcome of these proceedings would likely change."[2]  Although the BIA did not use the phrase "motions to remand," it denied the relief requested in those motions.  The BIA's denial was also adequately explained.  Read in context, the sentence denying the motions to remand did so for the same reasons that it rejected Petitioner's other arguments.  Those reasons "enable [this] court to perceive that [the BIA] has heard and thought and not merely reacted."  *Najmabadi v. Holder*, 597 F.3d 983, 990 (9th Cir. 2010) (quoting *Lopez v. Ashcroft*, 366 F.3d 799, 807 n.6 (9th Cir. 2004)).

2.  The IJ did not abuse his discretion in denying a continuance.  Petitioner was detained on March 18, 2020, but he was not forced to proceed without counsel

---

[1] None of the arguments Petitioner raises on appeal pertain to asylum or withholding of removal, so those issues are not discussed further.

[2] We do not address whether the BIA erred by applying the "would likely change" standard, rather than the "reasonable likelihood" standard, to his motions. Petitioner has waived this potential ground of error because his opening brief does not address this issue.  Instead, he argued only that the BIA erred in ignoring his motions.

until June 23.  It is reasonable to expect a petitioner to find counsel within three months.  Petitioner also received three continuances; only his fourth was denied.  We have generally permitted IJs to deny continuances after a few months and multiple prior continuances.  *Compare Arrey v. Barr*, 916 F.3d 1149, 1158 n.3 (9th Cir. 2019) (finding no abuse of discretion when removability was determined after four continuances), *and Vides-Vides v. INS*, 783 F.2d 1463, 1469–70 (9th Cir. 1986) (finding no abuse of discretion after four months and two prior continuances), *with Biwot v. Gonzales*, 403 F.3d 1094, 1099 (9th Cir. 2005) (finding an abuse of discretion after five business days).  Petitioner's detention, limited English, and limited education are common in immigration cases, but he identifies no case finding an abuse of discretion after a lengthy delay like this one.  Petitioner's COVID quarantine would explain a few weeks' delay in securing an attorney, but he had three months.  As a result, the IJ did not "allow a 'myopic insistence upon expeditiousness' to render the right to counsel 'an empty formality.'"  *Biwot*, 403 F.3d at 1099 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

Likewise, the IJ adequately explained the removability-hearing procedures.  "[T]he IJ must adequately explain the hearing procedures to [an unrepresented] alien, including what he must prove to establish his basis for relief."  *Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002).

Petitioner argues that the IJ did not (1) tell him that the government's burden of proof was "clear and convincing evidence"; (2) read him the charge of deportability; (3) confirm that he was served with the Notice to Appear and amended removability charge; or (4) inform him that he could deny the government's allegations and put it to its burden of proof. Each argument is unpersuasive.

First, although the IJ did not identify the burden of proof, the IJ identified each fact at issue. As a result, Petitioner had the "opportunity to present evidence and testimony" about those facts. *Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013). Any confusion about the burden of proof did not change that. His position would also require IJs to give petitioners an immigration-law primer, which would "transform IJs into attorneys for aliens." *Agyeman*, 296 F.3d at 884.

Second, although the IJ did not read the full charge of deportability, the IJ read out each allegation against Petitioner. *Agyeman* does not require the IJ to read documents, only to explain procedures. *See id.* at 883 (emphasizing "the importance of explaining to an alien what evidence will demonstrate their eligibility for relief").

Third, the IJ was not required to "confirm" proper service. The proofs of service were in the record. Petitioner was in DHS' custody and nothing suggested DHS could not serve him. Even now, Petitioner presents no evidence of improper

service.  The IJ was not required to "advise [Petitioner] of the availability of relief for which there is no apparent eligibility." *Cf. Valencia v. Mukasey*, 548 F.3d 1261, 1263 (9th Cir. 2008).

Finally, the IJ had to develop the record, and asking Petitioner whether the allegations were true helped satisfy due process rather than contributing to a violation.  Nothing suggested that Petitioner had a basis to contend that he was a United States citizen or that his criminal record was inaccurate, and an IJ has no duty to "invite the filing of meritless applications."  *See id.*

3.  Petitioner's three remaining CAT challenges are unexhausted or meritless.  Petitioner first argues that the IJ required him to show that he would be tortured based on his familial connections, even though he need not "establish [that] he will be tortured as a member of a family group."  Petitioner failed to exhaust this issue.  His notice of appeal does not argue that the IJ improperly required him to show that he was tortured based on family connections; to the contrary, his notice of appeal suggests that he was relying in part on family connections to argue that he would be tortured if removed to El Salvador.

Turning to Petitioner's second argument, he claims that "the BIA determined [that he] is not likely to be tortured because he has not been tortured in the past and he cannot name or identify individuals who would torture him," and that this reasoning is insufficient to support the BIA's conclusion.  His notice of appeal

raised this issue, and the BIA addressed it. Substantial evidence supports the BIA here. The absence of past torture is a key factor in determining the likelihood of future torture. *See* 8 C.F.R. § 1208.16(c)(3)(i). Similarly, his inability to identify who would torture him is significant, though not dispositive. Also, although Petitioner contends that he would be harmed because of his uncles, his aunt—the sister of at least two of those uncles—has been living in El Salvador without being tortured.

Third, Petitioner contends that "the BIA failed to consider all evidence relevant to the possibility of . . . [his] risk of torture as a deportee who will be returning to El Salvador after living in the United States for forty years." But the notice of appeal never addressed Petitioner's risk of torture as a deportee, only his risk of torture as a result of his family connections. This issue is therefore unexhausted.

**PETITION DENIED.**