**Mooneer Riad TAWADRUS, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–72349.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 2004.

Filed April 15, 2004.

Dan Korenberg (argued), Korenberg, Abramowitz & Feldun, Sherman Oaks, CA, for the petitioner.

Jennifer Lightbody (argued) and Anthony C. Payne (briefed), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for the respondent.

Before: FERNANDEZ, HAWKINS, and THOMAS, Circuit Judges.

## OPINION

MICHAEL DALY HAWKINS, Circuit Judge:

Mooneer Riad Tawadrus ("Tawadrus") appeals the Board of Immigration Appeals' ("BIA") affirmation of the Immigration Judge's ("IJ") decision denying him asylum and withholding of removal. Because the BIA summarily affirmed the IJ's judgment without opinion, our review is of the IJ's decision. *Fajardo v. INS*, 300 F.3d 1018, 1019 n. 1 (9th Cir.2002).

### FACTS AND PROCEDURAL HISTORY

**I. The Application and Testimony**

Tawadrus is a fifty-four year old native and citizen of Egypt, where he resided with his wife and three children. He and his family are members of the Coptic Christian Church, the Egyptian branch of the Eastern Orthodox Church. Tawadrus and his wife, both engineers, founded their own engineering and construction business

in 1985. The heart of Tawadrus' asylum claim is that members of certain government-controlled agencies placed economic sanctions on him for failing to convert to Islam.

Tawadrus' written application focuses on three incidents in which certain agencies withheld money due to him for his construction work—one in 1992 involving the Development and Agriculture Bank, Cairo, and two in 1995 involving the Nile General Contracting Company for Construction and Rehabilitation and the Port Said Housing Authority. As a result of receiving no payment on these projects, Tawadrus was left with "no income whatsoever even to raise and support [his] family." He was also unable to continue to earn a living as a contractor because he was known to subcontractors, banks and creditors as being delinquent with payments.

In his oral testimony, Tawadrus described two incidents in which he was beaten by unknown groups of Islamic fundamentalists. As a result of shock from the second incident, Tawadrus had a heart attack for which he was treated in both Cairo and London, where his brother lived. After remaining in London for five months, Tawadrus returned briefly to Egypt to secure a visa from the U.S. Consulate, returning to London to depart for the United States, where he entered Dallas, Texas on December 6, 1997. After exceeding his six-month authorization, the Immigration and Naturalization Service instituted removal proceedings on July 17, 1998.

## II.  The Removal Hearing

On September 17, 1998, the initial scheduling hearing in Tawadrus' removal proceeding took place. Normally at these preliminary hearings, the applicant concedes his identity, swears to the validity of his written application, and generally concedes to removability, but states the grounds on which he or she is seeking relief. *See generally,* 8 C.F.R. § 3.21 (1998) (now located at 8 C.F.R. § 1003.21). The date is then set for the hearing on the merits and the matter is continued until that time.

Tawadrus originally appeared for his preliminary hearing with his attorney, Howard Davis. Tawadrus was sworn and conceded removability and, upon recommendation of the government, Egypt was designated as the country of removal. The IJ then went off the record to select a hearing date. When they came back on the record, the following took place:

[Immigration] JUDGE [Gilbert T. Gembacz] FOR THE RECORD

Back on the record. While off the record, the Court suggested September 30 as a merit's [sic] hearing date. The respondent's counsel indicated that conflicted with his schedule because of religious reasons. The Court is going to set the matter to March 18, 1999 at 8:30 in the morning. The respondent indicated that his children were being threatened, he was an engineer, he has to get his children out of his country, he has to get his matter resolved immediately. The Court explained to him that there is[sic] approximately twelve hundred other people that this Court is responsible to hear cases. The respondent insisted that his case must be heard first. The matter will be set for 1:00 this afternoon. Counsel for the respondent indicated that he would be unavailable on such short notice to represent the respondent.

JUDGE TO MR. DAVIS

Q.  Counsel, at this time, if you wished to tender a request to withdraw, I will accept it and rule upon it at this time.

A.  I do request to withdraw.

Q.  Very well, counsel. Your withdrawal is permitted at this time.

JUDGE TO MR. TAWADRUZ [sic]

Q. Sir, you need to come back to court at 1:00 this afternoon for your hearing. Okay. I have your documents. You need to be prepared. If you have any witnesses, your witnesses need to be present. Any supporting documents that you may have need to be presented to the court or ready for presentation to the court at that time. If you have any documents in a foreign language, they must be translated into the English language. They must be certified. The interpreter must state that the translation is correct and accurate. The translator must also state that it is—that they are competent to translate between the foreign language and English. If you have any witnesses, they should be present. The Service will have the opportunity to cross-examine your witnesses. If the Service has any witnesses, you will have the opportunity to cross-examine the Service witnesses. Do you understand?

A. Yes.

Q. Okay. It is now 11:00, sir. I will see you back at 1:00.

. . . .

JUDGE TO MR. DAVIS

Q. I apologize; counsel. You have been released.

A. Okay.

JUDGE FOR THE RECORD

There being nothing further, the matter is continued to 1:00. Thank you.

Two hours later, Tawadrus returned alone for his merits hearing, and was recorded as *pro se* on the record. The majority of his documents in support of his claim were not admitted by the IJ after the government objected based on failure

to properly certify under 8 C.F.R. § 3.33.[1] After the hearing, in which the IJ first questioned Tawadrus, followed by the government lawyer, the IJ issued a decision denying Tawadrus' claim for asylum and withholding of removal. Tawadrus, with aid of counsel this time, sought timely appeal to the BIA, which summarily affirmed the IJ's decision pursuant to 8 C.F.R. § 3.1(a)(7) (now located at 8 C.F.R. § 1003.1), despite the unique facts and constitutional issues presented.

### JURISDICTION AND STANDARDS OF REVIEW

■ Proceedings in this case were initiated after April 1, 1997, providing jurisdiction under the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), 8 U.S.C. § 1252. Unlike questions of law, which are reviewed *de novo*, *Pedro–Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir.2000), findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also INS v. Elias–Zacarias*, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Adverse credibility determinations are reviewed under the same substantial evidence standard as findings of fact. *See Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir.2002).

■ To be eligible for asylum under IIRIRA, an applicant must demonstrate that "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" precludes return to his or her country of origin. 8 U.S.C. § 1101(a)(42)(A). To establish a well-founded fear, the petitioner must

---

1. 8 C.F.R. § 3.33 (Now located at 8 C.F.R. § 1003.33) states:

Any foreign language document offered by a party in a proceeding shall be accompanied by an English language translation and a certification signed by the translator that

must be printed legibly or typed. Such certification must include a statement that the translator is competent to translate the document, and that the translation is true and accurate to the best of the translator's abilities.

demonstrate both an objective showing of reasonable fear based on "credible, direct, and specific evidence," and a subjective showing of genuine fear of future persecution. *See Shirazi–Parsa v. INS,* 14 F.3d 1424, 1427 (9th Cir.1994), *overruled in part on other grounds by Fisher v. INS,* 79 F.3d 955, 963 (9th Cir.1996) (en banc). If past persecution is established, a rebuttable presumption of a well-founded fear arises, 8 C.F.R. § 208.13(b)(1), and the burden shifts to the government to demonstrate that there has been a "fundamental change in circumstances such that the applicant no longer has a well-founded fear." *Baballah v. Ashcroft,* 335 F.3d 981, 992 (9th Cir.2003) (quoting 8 C.F.R. § 208.13(b)(1)(I)(A)).

## Discussion

### I. Right to Counsel

■ Although there is no Sixth Amendment right to counsel in an immigration hearing, Congress has recognized it among the rights stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject of removal proceedings. *See Rios–Berrios v. INS,* 776 F.2d 859, 862 (9th Cir.1985). At the time of Tawadrus' hearing, the right to counsel in an immigration proceeding is codified at 8 U.S.C. § 1362; the regulations enforcing this right can be found at 8 C.F.R. § 292.1–.6, and in the Rules of Procedure for Immigration Courts, 8 C.F.R. § 1003.16 (formerly located at 8 C.F.R. § 3.16).[2]

■ We have repeatedly explained that for an applicant to appear *pro se,* there must be a knowing and voluntary waiver of the right to counsel. *See, e.g., Velasquez Espinosa v. INS,* 404 F.2d 544, 546 (9th Cir.1968). In order for a waiver to be valid, an IJ must generally: (1) inquire specifically as to whether petitioner wishes to continue without a lawyer; *see Reyes–Palacios v. INS,* 836 F.2d 1154, 1155–56 (9th Cir.1988); *Colindres–Aguilar v. INS,* 819 F.2d 259, 261 (9th Cir.1987); *Castro–Nuno v. INS,* 577 F.2d 577, 579 (9th Cir.1978); and (2) receive a knowing and voluntary affirmative response. *See Castro-O'Ryan v. INS,* 847 F.2d 1307, 1313 (9th Cir.1988); *Colindres–Aguilar,* 819 F.2d at 261; *Rios–Berrios v. INS,* 776 F.2d at 863. Failure to obtain such a waiver is an effective denial of the right to counsel, which, "in the light of the entire administrative record," may be an abuse of discretion. *See Castro-O'Ryan,* 847 F.2d at 1312. If the prejudice is so great as to potentially affect the outcome of the proceedings, the denial of counsel amounts to a violation of due process. *See id.* at 1313; *see also Colmenar v. INS,* 210 F.3d 967, 972 (9th Cir.2000). *Accord, Ponce–Leiva v. Ashcroft,* 331 F.3d 369, 374–75 (3d Cir. 2003).

■ In the present case, the IJ neither advised Mr. Tawadrus of the right to counsel at the time his original attorney withdrew, nor inquired whether Tawadrus wished to waive this right. *See Colindres–Aguilar,* 819 F.2d at 261 ("It is only after such an inquiry that the immigration judge could have decided whether petitioner waived his right to counsel, and, if not, whether there was sufficient cause to grant petitioner more time to obtain counsel."). When the IJ asked for and accept-

2. These statutes and regulations provide that the asylum applicant be notified of the right to counsel at various stages of removal proceedings, including in the Order to Show Cause and the Notice to Appear, 8 C.F.R. § 3.15(b)(5) (now located at 8 C.F.R. § 1003.15(b)(5)), and at the start of the re-

moval hearing itself, 8 C.F.R. § 240.10 (now located at 8 C.F.R § 1240.10). During a proceeding before an IJ, withdrawal of counsel is permitted only upon oral or written motion. 8 C.F.R. § 3.17(b) (now located at 8 C.F.R. § 1003.17(b)); 8 C.F.R. § 292.4(a) (now located at 8 C.F.R. § 1292.4(a)).

ed Mr. Davis' withdrawal, at no time did he direct any questions to Tawadrus concerning the implications of the attorney's departure on his case. The IJ simply directed Tawadrus to return in two hours prepared to represent himself. This brief exchange was totally lacking in all of the required safeguards highlighted above and is sufficient to constitute a denial of the statutory right to representation. *See Castro–Nuno,* 577 F.2d at 579 (abuse of discretion where IJ "neither reminded Castro–Nuno of his right to representation, nor inquired whether he wished a continuance to locate his counsel. . . .").

Given the IJ's failure to inquire, Tawadrus' presumed silence on the issue cannot, under the circumstances and the law of this court, be taken as an effective waiver.[3] In *Rios–Berrios,* the petitioner appeared without counsel but indicated that he had made some efforts to secure an attorney. The IJ continued the hearing twice, but when petitioner appeared a third time without a lawyer, the IJ commenced the hearing without an "inquiry as to his expressed wish to be represented by counsel." *Rios–Berrios,* 776 F.2d at 861. On appeal, we rejected the government's argument that Rios–Berrios had waived that right by remaining silent at the third hearing appearance and by "not repeating,

[at that time], that he wished to be represented by counsel." *Id.* at 863.[4]

We have also explained that when the record indicates the petitioner's desire to be represented, the IJ should not assume that silence or a failure to affirmatively request counsel is a *de facto* waiver.[5] *Colindres–Aguilar,* 819 F.2d at 261. In *Colindres–Aguilar,* we noted that counsel had been retained and had filed a motion, both strongly indicating the petitioner's desire to be represented, particularly where "the alien does not speak English and is unfamiliar with this country and its legal procedures." *Id.*

In the present case, Tawadrus retained a lawyer who had filed the paperwork in the case up to the point of the preliminary hearing. Moreover, the transcript indicates that Tawadrus desired to be represented. At the end of his cross-examination by the government and questioning by the IJ, when his hearing and opportunity to present his case were effectively over, the following exchange took place:

JUDGE TO MR. TAWADRUZ [sic]

Q. Okay. Sir, at this time, what I will do is I will ask that you be provided a blue change of address form for you to submit to the Court in the event you change your address between today and

---

3. It is impossible to know whether Tawadrus commented on his lawyer's indication that he would not be able to represent Tawadrus that afternoon when the parties were off the record.

4. Even where the petitioner has verbally indicated that he is appearing on his own behalf, this court has not always found a knowing and voluntary waiver. In *Castro–O'Ryan,* we found the following exchange insufficient:

> Q: You are here today by yourself, that is you don't have an attorney with you. Does that mean that you intend to speak for yourself today?
> A: Yes, I do.

Q: All right.

847 F.2d at 1311. We explained that "Castro's laconic answer to Judge Nail was not an intelligent, voluntary waiver of counsel . . . Castro did not competently and understandingly waive his statutory right." *Id.* at 1313.

5. The brief statement at the beginning of the continued hearing that Mr. Tawadrus was appearing *pro se* was likewise insufficient. *See Colindres–Aguilar,* 819 F.2d at 261 ("The judge's statement that petitioner was appearing 'pro se' is not a satisfactory inquiry into whether petitioner still desired representation in this case. It is unlikely that petitioner understood this term.").

the day that you receive my decision. Do you understand?

A: Yes. And, if I have to get another attorney, I don't mind getting another attorney.

Q: Sir, that's up to you. Your attorney has had a conflict.

A: Because I know that the Court must have an attorney.

Q: Sir,—

A: I apologize again. The attorney just walked out on me.

At the very least, Tawadrus was unaware that there would be no further proceedings in front of the IJ for which he would need an attorney, in turn implying that he did not understand the finality of his attorney's absence that day.

As a final note, Tawadrus' brief indicates that he asked for a continuance to obtain representation. Nothing in the record indicates that this is so. Nonetheless, the record does indicate that Tawadrus had appeared at his pre-hearing with counsel and at the time of his appearance he intended to be represented at his hearing on the merits. Nothing in the record indicates that he intended to waive counsel at that time.[6] In similar circumstances, we have placed a *sua sponte* responsibility on the IJ to "continue the hearing so as to provide the petitioner a reasonable time to locate counsel, and permit counsel to prepare for the hearing." *Rios–Berrios*, 776 F.2d at 863.

■ Despite Tawadrus' insistence on an earlier hearing date, the IJ's failure to even inquire as to whether Tawadrus wanted an attorney present was an abuse

of discretion and a violation of due process. *Castro–O'Ryan*, 847 F.2d at 1312–13; *see also Reyes–Palacios*, 836 F.2d at 1155–56 ("Petitioner was denied due process when the INS failed to inquire 'whether petitioner waived his right to counsel, and, if not, whether there was sufficient cause to grant petitioner more time to obtain counsel.'") (*quoting Colindres–Aguilar*, 819 F.2d at 261).

## II. Due Process Prejudice

In order to successfully merit relief from a due process violation, an asylum applicant must show not only the violation itself, but that "the outcome of the proceeding may have been affected by the alleged violation." *Colmenar*, 210 F.3d at 971. This is not a "but for" or "harmless error" standard; in proper circumstances, the petitioner "need not explain exactly what evidence he would have presented in support of his application, and we may infer prejudice in the absence of any specific allegation as to what evidence [petitioner] would have presented ... had he been provided the opportunity to present that evidence." *Cano–Merida v. INS*, 311 F.3d 960, 965 (9th Cir.2002) (citations and internal quotation marks omitted) (second alteration in original).

■ The absence of a lawyer at Tawadrus' hearing and the mere two hours he was given to prepare resulted in prejudice to his case in several respects, causing the IJ to deny his asylum application on three specific points: (1) "serious reservations" concerning credibility in light of the inconsistencies between the written application and the oral testimony; (2) failure to dem-

---

**6.** We emphasize that our decision in this case is, and must be, based upon the record itself, and the record does not show that Tawadrus insisted on proceeding immediately, even if he could not have counsel. We are in no position to speculate on what actually occurred off the record. That underscores the necessity that a complete record be made of discussions that are central to the decision of a case. That may require an IJ to reconduct a complete off the record colloquy on the record. The slight additional time that might take is well repaid by later savings at the time of review, and also helps assure that justice is done.

onstrate persecution on a "protected ground"; and (3) failure to demonstrate that the persecution was by a group that the government is "unwilling or unable to provide protection [from] or that he could not relocate to a different location in Egypt to seek such protection."

The framework of a deportation hearing differs substantially from an Article III trial, and also from other administrative proceedings. Nonetheless, federal immigration regulations provide that:

> Whenever an examination is provided for in this chapter, the person involved shall have the right to be represented by an attorney or representative who shall be permitted to [1] examine or cross examine such person and witnesses, [2] to introduce evidence, [3] to make objections which shall be stated succinctly and entered on the record, and [4] to submit briefs.

8 C.F.R. § 292.5(b). Indeed, these are the tasks that immigration lawyers become very familiar with. The *pro se* applicant, however, starts from a baseline of little knowledge of the intricacies of immigration law. *See, e.g., Castro-O'Ryan*, 847 F.2d at 1312 ("With only a small degree of hyperbole, the immigration laws have been termed 'second only to the Internal Revenue Code in complexity.' A lawyer is often the only person who could thread the labyrinth.") (internal citation omitted).

Tawadrus was prejudiced by the absence of a lawyer and his lack of legal knowledge in three out of four of these procedural areas: (1) he did not have the opportunity, at many points in the testimony, to present reasonable explanations for perceived inconsistencies leading to the IJ's adverse credibility determination; (2) he was denied the opportunity to reasonably present his case with the aid of an advocate familiar with his legal and evidentiary burdens and was not given the time or instruction to have his translated documents properly certified under 8 C.F.R. § 3.33 or to make any objection to the admission of certain documents;[7] and (3) he was never questioned about the government agencies and officials listed in his asylum application and therefore was never able to draw the connection to the government or a group the government was "unwilling or unable" to control—the heart of his persecution claim. *Singh v. INS*, 94 F.3d 1353, 1359 (9th Cir.1996).

Most significantly, Tawadrus was clearly unable to present a succinct and internally consistent account of his claim of persecution without the guidance of an advocate. At the hearing, he seemed to abandon the potentially viable claims of economic sanctions by specific and denominated government agencies laid out in his original application in favor of accounts of being beaten by Islamic fundamentalists.[8] Whether or

---

7. A particularly egregious mistake, Tawadrus made no objection to a letter of uncertain origin claiming second hand that the Coptic bishop of Egypt had stated that Christians were in no way persecuted by the Islamic majority in that country. Even the government's own State Department Report renders such an assertion questionable. Moreover, some of the documents kept out by the government's objections would have corroborated his fears of future persecution, particularly the letters from his daughter and his attorney. How Mr. Tawadrus was supposed to apprise himself of the requirements of 8 C.F.R. § 3.33 as well as meet those requirements in two

hours time without the aid of an attorney is unclear at best, entirely unfair at worst.

8. The IJ found that Tawadrus' testimony "failed to make references to any specific person, agency or party, relating to his construction contracts, who might have pressured him to convert to Islam," without recognizing that there was no specific questioning on that point by either the IJ or the government's attorney. In his application, Tawadrus not only specifically named the various government agencies that had withheld payment, he also named specific individuals from those agencies that had pressured him about religious conversion.

not this indicates a lack of credibility, at the very least, an attorney would have been able to bring these inconsistencies to Tawadrus' attention for some explanation. How Tawadrus could parlay these allegations into a case for well-founded fear is irrelevant—such an explanation is not required for a showing of due process prejudice.[9] *Colmenar*, 210 F.3d at 972.

In similar circumstances, we have found the absence of counsel prejudicial:

> [Petitioner], a carpenter with some education in engineering and a very imperfect command of spoken English, was unable to articulate the basis of his fears of persecution under oral examination by Judge Nail and counsel for the INS.... Lacking the counsel he asked for, Castro lacked what [ ] has [been] said to be indispensable and missing in totalitarian countries—"a clear-minded ally who knows the law." No one was there to help him tell his story. His case was seriously prejudiced by the lack of legal assistance that Congress has mandated.

*Castro–O'Ryan*, 847 F.2d at 1313–14 (internal citations omitted). It is likewise clear that the lack of representation "potentially affected the outcome of [Tawadrus'] proceedings," *Colmenar*, 210 F.3d at 972 (quoting *Campos–Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir.1999)) (alteration omitted), and therefore the IJ's actions not only constituted an abuse of discretion requiring remand, *Castro–O'Ryan*, 847 F.2d at 1312, they also violated Tawadrus' right to due process.

CONCLUSION

Tawadrus' case was prejudiced by the IJ's failure to properly obtain a knowing and voluntary waiver of counsel. This abuse of discretion by the IJ potentially affected the outcome of the hearing, creating a level of prejudice tantamount to a violation of Tawadrus' due process rights.

Petition for Review GRANTED and REMANDED for further proceedings consistent with the opinion.

---

9. We have found persecution where the government has placed economic sanctions or penalties on an individual on account of a protected ground where that deprivation has threatened the livelihood of the applicant or his family. *See, e.g., Baballah*, 335 F.3d at 989–90 (Severe harassment, threats, violence and discrimination made it virtually impossible for the applicant to earn a living.); *Desir v. Ilchert*, 840 F.2d 723, 727 (9th Cir.1988) (finding persecution where an applicant was "tangibly harmed, both physically and in his ability to earn a livelihood."); *Kovac v. INS*, 407 F.2d 102, 107 (9th Cir.1969) (Persecution may encompass a "deliberate imposition of substantial economic disadvantage."). *Cf. Khourassany v. INS*, 208 F.3d 1096, 1101 (9th Cir.2000) (Forced closing of the applicant's restaurant, when he continued to operate other businesses, did not constitute persecution.).