**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TALDYBEK USUBAKUNOV, *Petitioner*, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, *Respondent*. | No. 18-72974 <br><br> Agency No. A216-266-602 <br><br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 8, 2021
San Francisco, California

Filed November 1, 2021

Before: M. Margaret McKeown and Sandra S. Ikuta,
Circuit Judges, and Joan N. Ericksen,* District Judge.

Opinion by Judge McKeown;
Dissent by Judge Ikuta

---

*The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

**SUMMARY**[**]

**Immigration**

Granting Taldybek Usubakunov's petition for review of a decision of the Board of Immigration Appeals, and remanding, the panel held that an immigration judge's refusal to grant a continuance of Usubakunov's merits hearing deprived him of his right to counsel.

Applying a fact-based inquiry, the panel concluded that under the unique circumstances presented, the IJ's denial of a continuance of Usubakunov's merits hearing was an abuse of discretion because it was tantamount to denial of counsel. The panel explained that this case illustrated diligence, not bad faith, coupled with very difficult barriers faced by a detained applicant who does not speak English. Usubakunov sought and identified counsel within the period the IJ originally thought reasonable, but he was stymied by counsel's scheduling conflict. Usubakunov had identified by name and organization the lawyer who would ultimately represent him and sought his first continuance of the merits hearing. The panel wrote that this was not a case of indefinite continuances, nor was it a case where Usubakunov was trying to game the system. To hold against Usubakunov, the panel wrote that it would have to transform this circuit's caselaw, shifting from a fact-specific inquiry to a bright-line rule that designates a specific time frame after which continuances no longer need be granted.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Because a petitioner who is wrongly denied assistance of counsel at his merits hearing need not show prejudice, the panel concluded its inquiry without addressing Usubakunov's other challenges. The panel remanded for further proceedings.

Dissenting, Judge Ikuta wrote that the majority failed to identify any standard or principle (other than concern for the common difficulties facing a detained, non-English-speaking alien) for refusing to defer to the IJ's exercise of discretion, and that under this approach, the court may strike down an IJ's discretionary denial of a continuance in any case in which a detained, non-English-speaking alien requests a continuance to seek counsel. Judge Ikuta observed that the IJ continued Usubakunov's case four times for over 17 weeks in total, giving Usubakunov over 28 weeks to find an attorney from the date he arrived in the United States and was handed a list of legal services. In Judge Ikuta's view, there were no unusual circumstances making the IJ's denial of Usubakunov's motion for a fifth continuance unreasonable.

## COUNSEL

Bardis Vakili (argued), ACLU Foundation of San Diego and Imperial Counties, San Diego, California, for Petitioner.

Maarja Tiganik Luhtaru (argued), Trial Attorney; Keith I. McManus, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C; for Respondent.

Kristin MacLeod-Ball, American Immigration Council, Brookline, Massachusetts; Mary Kenney, American Immigration Council, Washington, D.C.; for Amicus Curiae American Immigration Council.

Laura J. Edelstein, Jenner & Block LLP, San Francisco, California, for Amicus Curiae Women's Refugee Commission.

## OPINION

McKEOWN, Circuit Judge:

For decades, we have described United States immigration law as labyrinthine. *See, e.g.*, *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005) ("The proliferation of immigration laws and regulations has aptly been called a labyrinth that only a lawyer could navigate."); *Escobar Ruiz v. INS*, 813 F.2d 283, 292 (9th Cir. 1987) ("[T]he proceedings involve the intricate laws of the [Immigration and Nationality Act], which resemble 'King Minos's labyrinth in ancient Crete.'" (quoting *Lok v. INS*, 548 F.2d 37, 38 (2d Cir. 1977))). And "[w]hile U.S. immigration law is generally notorious for its esoteric nature," asylum law "is one of the more complex areas thereof." *Quintero v. Garland*, 998 F.3d 612, 632 (4th Cir. 2021).

Navigating the asylum system with an attorney is hard enough; navigating it without an attorney is a Herculean task. The challenge is further complicated where an applicant is detained and does not speak English. Consequently, asylum seekers have a right to counsel, protected by the Constitution and by statute. When that right

is frustrated, applicants are left to fend for themselves in an impenetrable system.

Detained, separated from his family, speaking no English, and having diligently pursued representation, asylum applicant Taldybek Usubakunov finally connected with a pro bono attorney at Catholic Charities who agreed to represent him (and, indeed, did represent him in subsequent proceedings). When that attorney was unavailable on the date of his merits hearing, Usubakunov requested his first continuance of that hearing. Though Usubakunov was on the brink of obtaining counsel, the Immigration Judge ("IJ") denied the continuance, leaving Usubakunov to navigate the labyrinth unassisted. Perhaps unsurprisingly, he was not successful. But the point here is not the ultimate outcome of his challenge; rather, it is the fact that he did not get a fair chance to proceed with counsel.

This is not a case of a petitioner abusing the system or requesting serial delays of his merits hearing—Usubakunov had found an attorney willing to take his case. Although it may be tempting to look for a bright-line rule, we hew to our precedent that the "inquiry is fact-specific and thus varies from case to case." *Biwot*, 403 F.3d at 1099. In doing so, we do not suggest that there is "no limit," Dissent at 19, to the permissible delay for obtaining a lawyer. Our fact-specific inquiry here leads us to conclude that the IJ's refusal to grant a continuance violated Usubakunov's right to counsel.

## BACKGROUND

Usubakunov fled Kyrgyzstan[1] with his thirteen-year-old son, T.U.; his adult stepson, Renat; and Renat's wife, Elnura. Usubakunov has raised Renat since he was very young. According to Usubakunov, Renat was a leader of the youth wing of the Social Democratic Party of Kyrgyzstan, and because of Renat's support of a certain political candidate, members of their family were threatened. These threats formed the basis of Usubakunov's claims for asylum, withholding of removal, and CAT relief.

Despite the related nature of their claims, the family was separated after arriving in the United States. Usubakunov was detained at Otay Mesa Detention Facility in California, Renat and Elnura were sent to another detention center, and T.U. was sent to a third. Though Usubakunov was detained in California, he was initially given a list of legal services providers in Pennsylvania, where he hoped to go if released.

After his credible fear interview on October 31, 2017, Usubakunov was found credible. He received a notice to appear on November 13, 2017, and was provided lists with just four pro bono legal services providers near his facility.

On December 20, 2017, Usubakunov appeared before an IJ at Otay Mesa. Because Usubakunov needed time to look for an attorney, the IJ continued the hearing to January 12, 2018. On January 12, because Usubakunov continued to seek counsel, the IJ gave Usubakunov "one final continuance to look for an attorney." On February 9, the IJ asked Usubakunov if he had found an attorney. Usubakunov

---

[1] References to Kazakhstan in the IJ's oral decision are transcription errors.

informed the IJ that he had sent a letter from detention seeking representation but had received no response. The IJ said that he would have to represent himself that day and read him the allegations. After finding Usubakunov removable as charged, the IJ gave Usubakunov an asylum application, ordered him to complete it in English, and reset the hearing to March 9, 2018.

Usubakunov was unable to finish his asylum application by March 9 and asked for a continuance, which the IJ granted. Because Usubakunov could not speak English, another detainee prepared the application for him. On April 20, 2018, Usubakunov filed his asylum application. The IJ offered to schedule the merits hearing on May 8, 2018, but said that "[i]f that's too soon and you're still trying to get more documents, we can come back on July the 30th." Usubakunov selected May 8.

At the May 8 merits hearing, Usubakunov stated that he was in principle ready to go forward "but [his] attorney was not able to make it [that day]." The IJ insisted on a "yes-or-no answer" as to whether he was ready to go forward. Usubakunov responded, "Yes, yes," and provided the IJ with a written motion to continue. The motion stated:

> I, Taldybek Usubakunov, respectfully request that this Court grant a brief continuance of 45 days . . . because I have been informed that Luis Gonzalez, an attorney from Catholic Charities, is very likely to represent me *pro bono*. However, Mr. Gonzalez only learned of my case late last week, and has not had the opportunity to meet me in person with a Russian interpreter so that we can make his representation official and submit this request for me. He

was hoping to come in person today to help me make this request, but I am informed he has a conflicting hearing for another client.

I do not wish to prolong my case any longer than necessary.  My young child has been taken from me . . . and I need to get back to him. . . .

My older stepson Renat is also seeking asylum and our asylum cases involve many of the same issues.  But he is in another detention center, so I do not know if he will be able to testify in my case.  If I am represented, maybe that will be more possible.

I am sincerely sorry for the short notice, but I was only told of these developments on Monday[,] May 7, 2018.  I did not know how to inform the court before today.

The IJ asked if the government counsel could tell him anything "about the stepson's case which might have some parallels to this case."  The government counsel said that he had no information on Renat's case.  (But, of course, the government was in the best position to know about the pending related case.)  The IJ then denied Usubakunov's motion to continue.

The merits hearing proceeded, with Usubakunov representing himself.  The IJ found that Usubakunov was not credible in light of an omission in his asylum application and purported inconsistencies between his testimony and

application.[2]      Because Usubakunov was deemed not credible, the IJ concluded that Usubakunov did not satisfy his burden of establishing eligibility for asylum or withholding of removal.  Nor could Usubakunov establish eligibility for CAT relief, because the IJ concluded that the country conditions evidence, without credible testimony, did not show that he would be tortured if he returned to Kyrgyzstan.

While Usubakunov's proceedings were unfolding, Renat and Elnura were also pursuing asylum—in front of a different IJ.  On June 22, 2018, less than two months after Usubakunov's asylum application was denied, Renat and Elnura were each granted asylum.  In his case, Renat credibly testified about an episode where he was threatened and hit by a political deputy and a criminal agent at a swimming pool.  This testimony was consistent with Usubakunov's recounting of events.  Renat also testified that his mother "received a call from the Ministry of Internal Affairs informing her that [Usubakunov] [wa]s wanted on a warrant."

On appeal to the BIA, Usubakunov was represented by counsel—including the attorney identified in his motion to continue.  Usubakunov argued that the IJ proceedings violated his right to counsel and his right to present evidence; challenged the IJ's adverse credibility finding; and challenged the denials of asylum, withholding of removal, and CAT relief.  The BIA dismissed Usubakunov's appeal, concluding that he had not demonstrated good cause for an additional continuance; his right to counsel was not violated; the adverse credibility determination was not erroneous; and

---

[2] Though the IJ referred to additional reasons, the Board of Immigration Appeals ("BIA") did not adopt those reasons on appeal.

Usubakunov had not met his burden of proof for asylum, withholding of removal, or CAT relief.  The BIA concluded that the grant of asylum to Renat, based on Renat's "personal experiences in Kyrgyzstan," was not dispositive in Usubakunov's case.

## ANALYSIS

Deportation "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom." *Bridges v. Wixon*, 326 U.S. 135, 154 (1945).  The high stakes of deportation and the labyrinthine nature of immigration laws amplify the importance of procedural protections in removal proceedings. *See Biwot*, 403 F.3d at 1098.  "Meticulous care must be exercised lest the procedure by which [the noncitizen] is deprived of . . . liberty not meet the essential standards of fairness." *Bridges*, 326 U.S. at 154.

One crucial procedural protection is the right to counsel. Rooted in the Due Process Clause and codified at 8 U.S.C. § 1362 and § 1229a(b)(4)(A), noncitizens have the right to counsel in removal proceedings, albeit not the right to counsel paid for by the government. *See Biwot*, 403 F.3d at 1098; *see also* 8 C.F.R. § 1003.16(b); *Gomez-Velazco v. Sessions*, 879 F.3d 989, 993 (9th Cir. 2018) ("[A]n individual who asserts that he was denied the right to counsel in immigration proceedings is asserting that his right to due process was violated.").  As we have stressed, "[t]he importance of the right to counsel, whether it is guaranteed by the Constitution or by Congressional action, cannot be overstated." *Hernandez-Gil v. Gonzales*, 476 F.3d 803, 806 (9th Cir. 2007).  "In creating a statutory right to counsel, Congress recognized that [noncitizens] have a great deal at stake in removal proceedings and acknowledged the importance of representation by an attorney in those

proceedings." *Baltazar-Alcazar v. INS*, 386 F.3d 940, 944 (9th Cir. 2004).

The value of counsel is not merely a matter of common sense; counsel's importance has been empirically documented. Using data provided by the Department of Justice, a national study found that represented respondents were over five times more successful in obtaining relief from removal than similarly situated unrepresented respondents. Ingrid V. Eagly & Steven Shafer, *A National Study of Access to Counsel in Immigration Court*, 164 U. Pa. L. Rev. 1, 2, 57 (2015); *see also* Sabrineh Ardalan, *Access to Justice for Asylum Seekers: Developing an Effective Model of Holistic Asylum Representation*, 48 U. Mich. J.L. Reform 1001, 1003 & n.6 (2015) (discussing a study that found that represented asylum seekers were almost five times more likely to be granted asylum than those without counsel); Lori A. Nessel & Farrin Anello, Seton Hall L. Ctr. for Soc. Just., *Deportation Without Representation: The Access-to-Justice Crisis Facing New Jersey's Immigrant Families* 3 (2016) (finding that, in New Jersey, represented respondents were at least three times more likely to obtain relief from removal than unrepresented respondents). And this disparity has a particular impact on detained respondents, who are far less likely than non-detained respondents to secure representation. *See* Eagly & Shafer, *supra*, at 32 (concluding that respondents in removal proceedings who are not detained are nearly five times more likely to obtain counsel than those who are detained); Nessel & Anello, *supra*, at 14.

Notwithstanding the importance of counsel, a noncitizen may knowingly and voluntarily waive the right to counsel and proceed *pro se*. *See Mendoza-Mazariegos v. Mukasey*, 509 F.3d 1074, 1080 (9th Cir. 2007). Usubakunov did not

waive his right to counsel; rather, he plainly requested additional time to vindicate that right.

When an IJ declines to grant a continuance, we carefully consider the factual circumstances. *See id.* We recognize that immigration courts bear a crushing caseload and an applicant cannot unreasonably delay the administrative process, which has various component parts and must be managed efficiently by the IJ. Removal proceedings often include multiple component parts and multiple hearings. *See Tawadrus v. Ashcroft*, 364 F.3d 1099, 1101 (9th Cir. 2004). Typically, the process starts with a preliminary removal hearing. *See id.* "The date is then set for the hearing on the merits and the matter is continued until that time." *Id.* There may even be a third hearing, between the removal hearing and the merits hearing, where the petitioner files their application for relief from removal. *See, e.g.*, *Gonzalez-Veliz v. Garland*, 996 F.3d 942, 944 (9th Cir. 2021); *Arrey v. Barr*, 916 F.3d 1149, 1153 (9th Cir. 2019).

"Absent a showing of clear abuse, we typically do not disturb an IJ's discretionary decision not to continue a hearing. Nonetheless, we cannot allow a 'myopic insistence upon expeditiousness' to render the right to counsel 'an empty formality.'" *Biwot*, 403 F.3d at 1099 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). The question we review de novo is whether Usubakunov's right to counsel was violated when the IJ denied his May 8 motion for the first continuance of his merits hearing. *See Mendoza-Mazariegos*, 509 F.3d at 1079. In making this determination, we are guided not by bright-line rules but by a fact-specific inquiry. *Biwot*, 403 F.3d at 1099. "We pay particular attention to the realistic time necessary to obtain counsel; the time frame of the requests for counsel; the number of continuances; any barriers that frustrated a

petitioner's efforts to obtain counsel, such as being incarcerated or an inability to speak English; and whether the petitioner appears to be delaying in bad faith." *Id.*

Here, the IJ denied the continuance on the grounds that the attorney himself had not provided any notice to the court, Usubakunov had been granted a continuance twice to look for counsel for his preliminary removal hearing and twice to file his asylum application, and Usubakunov had been detained for over six months. The BIA concluded that Usubakunov's right to counsel was not violated because the IJ had ensured Usubakunov was provided with a list of legal services providers, the IJ had granted prior continuances, and Usubakunov had not provided "evidence, such as a written statement from the attorney in question, demonstrating th[e] likelihood that he would secure representation."

We disagree and conclude that the Agency displayed the "myopic insistence upon expeditiousness" that we have warned against. *See Biwot*, 403 F.3d at 1099 (quoting *Ungar*, 376 U.S. at 589). Considering the specific factual circumstances of this case, we hold that the IJ's denial of a continuance violated Usubakunov's right to counsel.

We are informed by the First Circuit's persuasive analysis in *Hernandez Lara v. Barr*, 962 F.3d 45 (1st Cir. 2020). In that case, Hernandez received several continuances, and ultimately identified an attorney that would represent her at the merits hearing. *Id.* at 51. The attorney did not attend the merits hearing, however, and the IJ refused Hernandez's request for another continuance. *Id.* Like Usubakunov, Hernandez was represented by the identified attorney before the BIA on appeal. *Id.* at 52. For reasons strikingly similar to those here, the BIA affirmed the IJ's refusal to grant another continuance because Hernandez had been granted several continuances to obtain counsel and

complete her asylum application, and she had not submitted an appearance form for the attorney. *Id.* at 52–53.

The First Circuit noted that the IJ had not suggested that Hernandez acted in bad faith and that nothing in the record indicated an attempt to game the system. *Id.* at 56. Additionally, Hernandez was detained and did not speak English, factors that made obtaining counsel more difficult. *Id.* at 55. The First Circuit held that the IJ violated Hernandez's right to counsel by denying her request for a continuance for the merits hearing. *Id.* at 56. "For the IJ on the day of Hernandez's merits hearing—the most critical stage of the proceeding—to cut off Hernandez's access to an attorney whom she had just retained after much effort makes no sense." *Id.*

So too here. Like Hernandez, Usubakunov was detained and did not speak English. As we have consistently recognized, detention and language barriers frustrate a noncitizen's ability to obtain counsel and increase the time needed to secure representation. *See Biwot*, 403 F.3d at 1099. Immigrants in detention are often limited in their access to telephone calls and visits, which hinders their ability to contact and meet with prospective attorneys. *See* Michael Kaufman, Note, *Detention, Due Process, and the Right to Counsel in Removal Proceedings*, 4 Stan. J. C.R. & C.L. 113, 127 (2008). "A language barrier is apt to further complicate the process of contacting prospective attorneys." *Hernandez Lara*, 962 F.3d at 55.

Additionally, the initial list of legal services providers given to Usubakunov listed lawyers in Pennsylvania, far from the venue of the hearing in California. The Otay Mesa and San Diego lists, once furnished, had only four unique listings, despite the high need for legal services at Usubakunov's facility, which houses roughly a quarter of all

Immigration and Customs Enforcement detainees in California. *See ICE Statement on California AB32 Restricting Immigration Detention Facilities in the State*, U.S. Immigration and Customs Enforcement (Oct. 11, 2019), https://www.ice.gov/statements/ice-statement-california-ab32-restricting-immigration-detention-facilities-state.

Moreover, obtaining a list of potential counsel is only the beginning of a long and frustrating process for the applicant. It is not a simple process of picking up a phone, contacting an attorney, and waiting for a prompt call back. Usubakunov needed to figure out how to connect with an attorney despite being at a facility where "[d]etainees cannot receive incoming calls." *Otay Mesa Detention Center (San Diego CDF)*, U.S. Immigration and Customs Enforcement (June 14, 2021), https://www.ice.gov/detain/detention-facilities/otay-mesa-detention-center-san-diego-cdf. After Usubakunov had reached counsel, counsel needed not only to coordinate a time to speak with Usubakunov, but also to find and coordinate the assistance of a Russian interpreter. Usubakunov was on the verge of having all these conditions satisfied when the IJ denied the continuance.

Further hindering Usubakunov was the fact that he had been separated from his family members, who were held in separate facilities. The separation from his teenage son was particularly distressing. *See Rios-Berrios v. INS*, 776 F.2d 859, 862–63 (9th Cir. 1985) (concluding that the IJ should have continued the immigration hearing where "[t]he petitioner was in custody, spoke only Spanish, had limited education, was unfamiliar with this country and its legal procedures, and had been removed nearly 3,000 miles from his only friend in this country").

The government's reliance on *United States v. Moriel-Luna*, 585 F.3d 1191, 1201–02 (9th Cir. 2009), where the court held that one short continuance did not violate the petitioner's right to counsel, fails to persuade because the circumstances in that case were so factually dissimilar. There, the petitioner spoke English, was not detained, and had previously been represented by an attorney. *Id.* Here, Usubakunov's isolation, detention, and language barriers complicated his securing counsel and weighed in favor of granting the continuance.

Tipping the scale further in his favor is that Usubakunov was not gaming the system or delaying in bad faith. *See Mendoza-Mazariegos*, 509 F.3d at 1080 (considering whether the petitioner was "seeking to delay the proceedings in bad faith"). To the contrary, Usubakunov endeavored to keep his case progressing so that he could be reunited with his minor son, T.U. When offered the choice of dates for his merits hearing, Usubakunov chose the earliest option. He sought a further continuance only because he had all but obtained an attorney and that attorney was unavailable the day of the hearing. He identified counsel by name and organization. Neither the IJ nor the BIA suggested that Usubakunov's representations about attorney Gonzalez were untrue or exaggerated. *Cf. Arrey*, 916 F.3d at 1157 ("We cannot affirm the BIA on a ground upon which it did not rely." (internal quotation marks omitted)).

Usubakunov's efforts to get to that point had been diligent in the face of difficult circumstances. Usubakunov was given contact information for four legal services providers in Southern California, and he contacted them promptly. In January, "negotiations [we]re in place." In February, Usubakunov reported to the IJ that he had "sent a letter" but had not "received any response." One pro bono

legal services provider eventually declined representation, but Usubakunov ultimately secured representation with another. Usubakunov did not delay or act in bad faith.

The time frame of Usubakunov's requests for counsel does not weigh against him. *See Hernandez-Gil*, 476 F.3d at 808 ("Though it is true that Hernandez-Gil had sixteen months between his initial removal proceeding and his cancellation of removal hearing to meet with counsel and he did not do so, this does not negate Hernandez-Gil's statutory right to have counsel at his merits hearing."). Usubakunov was initially given continuances from December 20, 2017, to February 9, 2018, to secure counsel. This period included multiple federal holidays—Christmas Day, New Year's Day, and the Martin Luther King, Jr. holiday —when many offices are closed. The winter holiday period contributed to coordination and scheduling difficulties. Even so, Usubakunov endeavored to obtain counsel. Though Usubakunov also was given time to complete his asylum application, that time does not weigh against granting a continuance of the merits hearing. During that time, Usubakunov needed to focus on "the paperwork required to pursue [his] claims for relief," prior to preparing for a merits hearing. *Hernandez Lara*, 962 F.3d at 55.

Additionally, Usubakunov had not previously been granted any continuance of the merits hearing. And in scheduling the merits hearing, the IJ had originally considered July 30 a reasonable date. Usubakunov's request for a continuance would have kept his merits hearing within that time frame.

This is not a case of indefinite continuances, nor is it a case where Usubakunov was trying to game the system. To hold against Usubakunov, we would have to transform our caselaw, shifting from a fact-specific inquiry to a bright-line

rule that designates a specific time frame after which continuances no longer need be granted. That is not the law. Indeed, the cases the dissent cites apply this fact-specific inquiry, rather than simply resting on the amount of time provided. *See, e.g.*, *Arrey*, 916 F.3d at 1158.

This case illustrates diligence, not bad faith, coupled with very difficult barriers faced by a detained applicant who does not speak English. Usubakunov sought and identified counsel within the period the IJ originally thought reasonable, but he was stymied by counsel's scheduling conflict. He had identified by name and organization the lawyer who would ultimately represent him, and Usubakunov thus sought his first continuance of the merits hearing. We conclude that "[u]nder these circumstances, denial of a continuance was an abuse of discretion because it was tantamount to denial of counsel." *Biwot*, 403 F.3d at 1100. Given these unique circumstances, our grant of the petition will not open the floodgates of continuances, as we apply the same fact-based inquiry we have done for years.

That concludes our inquiry, as a petitioner who is wrongly denied assistance of counsel at his merits hearing need not show prejudice. *See Gomez-Velazco*, 879 F.3d at 993 (citing *Montes-Lopez v. Holder*, 694 F.3d 1085, 1090 (9th Cir. 2012)). In light of the need to remand for a new hearing, we do not address Usubakunov's other challenges. We grant Usubakunov's petition for review and remand for further proceedings.

**PETITION GRANTED and REMANDED.**

IKUTA, Circuit Judge, dissenting:

I

How long may an alien delay removal proceedings in order to obtain an attorney? Based on the majority's approach in this case, there is no limit to the length of delay. Here the IJ continued Usubakunov's case four times for over 17 weeks in total, giving Usubakunov over 28 weeks to find an attorney from the date he arrived in the United States and was handed a list of legal services. There were no unusual circumstances making the IJ's denial of Usubakunov's motion for a *fifth* continuance unreasonable. The majority fails to identify any standard or principle (other than concern for the common difficulties facing a detained, non-English-speaking alien) for refusing to defer to the IJ's exercise of discretion here. Under this approach, therefore, the court may strike down an IJ's discretionary denial of a continuance in any case in which a detained, non-English-speaking alien requests a continuance to seek counsel. Such a result directly contradicts our case law, which holds both that the IJ had no obligation "to grant indefinite continuances if [the alien] did not produce counsel," *United States v. Moriel-Luna*, 585 F.3d 1191, 1201 (9th Cir. 2009), and that we are bound to defer to the IJ's reasonable exercise of discretion, *see Biwot v. Gonzales*, 403 F.3d 1094, 1099 (9th Cir. 2005). Because there is no basis for refusing to defer to the IJ's exercise of discretion here, I dissent.

II

On October 18, 2017, Taldybek Usubakunov, a native and citizen of Kyrgyzstan, sought admission into the United States at the San Ysidro, California port of entry without a valid entry document. After he told the Border Patrol officer that he wished to relocate to Philadelphia, Pennsylvania and

apply for political asylum, he was given a list of legal services available in Pennsylvania. Usubakunov was then taken into custody and detained at the Otay Mesa Detention Facility in San Diego, California pending an interview with a credible fear officer.

On November 13, 2017, the Department of Homeland Security (DHS) served Usubakunov with a Notice to Appear (NTA), charging him with removability as an alien who was not in possession of a valid entry document. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). He received a list of pro bono legal service providers, which included three providers practicing in the Otay Mesa immigration court and three in the San Diego immigration court.[1]

Usubakunov's initial proceedings in immigration court took place on December 20, 2017, with a Russian interpreter. The IJ told Usubakunov that he had a right to be represented by an attorney of his choosing and at his expense, and confirmed that Usubakunov had received a list of free or low cost legal service providers. The IJ then asked Usubakunov whether he needed "some time to look for an attorney." When Usubakunov said he did, the IJ continued the case until January 12, 2018.

At the January 12 hearing, Usubakunov again appeared without counsel. In response to the IJ's question of whether he had been able to find an attorney, Usubakunov stated: "Not yet. The negotiations are in place. For the moment, I don't have any." The IJ told Usubakunov that he would grant him "one final continuance to look for an attorney" and reset the case to February 9, 2018. The IJ warned

---

[1] Contrary to the majority, the record does not establish that "he contacted them promptly." Majority at 16.

Usubakunov that it would "most likely be [his] last continuance for an attorney."

At the February 9 hearing, the IJ stated, "Sir, I've reset your case two times for you to be able to have a chance to find an attorney.  Do you have an attorney?"  Usubakunov said that he had "sent a letter" but had not "received any response from them."  The IJ then proceeded with the hearing.  He informed Usubakunov of his rights "to examine and object to evidence, . . . present [his] own evidence, and . . . to cross-examine witnesses against [him]."  Based on Usubakunov's admissions to the allegations in the NTA, the IJ found him removable as charged.

Because Usubakunov stated that he feared returning to Kyrgyzstan due to persecution, the IJ gave him an asylum application.  The IJ continued the case to March 9 to give Usubakunov time to complete it.  The IJ also warned Usubakunov that if he did not have a completed application at the next hearing, the IJ could deem the application to be abandoned and Usubakunov could be ordered removed. Usubakunov said he understood.

At the March 9 hearing, the IJ reminded Usubakunov that he had reset the case for Usubakunov to file his application for asylum, and asked him if he had the application ready to file.  Usubakunov told the IJ that "I haven't had time to fill them out yet.  My attorney told me it's going to be ready within the next few weeks, and as well as the Form 859 [the Application for Asylum and for Withholding of Removal], it will be completed by my attorney."  Usubakunov therefore asked for another continuance.  The government objected.  It argued that the asylum application should be deemed abandoned because the IJ had warned Usubakunov "back on February 9, 2018, that today was the day to submit it."  The IJ granted the

continuance over the government's objection. The IJ again warned Usubakunov that if he did not have a completed application at the next hearing, he would be ordered removed. The hearing was continued until April 20, 2018.

At the April 20 hearing, Usubakunov submitted his asylum application. Although at the March 9 hearing Usubakunov had told the IJ that his attorneys were preparing the application, Usubakunov submitted an application that had been completed by a detainee at the Otay Mesa Detention Facility.[2] After Usubakunov stated that he was ready for a merits hearing, the IJ gave him the choice of either May 8 or July 30, 2018 for the hearing. Usubakunov picked the earlier date, May 8.

At the May 8 hearing, Usubakunov appeared without an attorney. Initially, Usubakunov told the IJ that he was ready to go forward with the merits hearing, but then handed the IJ a motion for a 45-day continuance to find an attorney. The motion stated: "I request this continuance because I have been informed that Luis Gonzalez, an attorney from Catholic Charities, is very likely to represent me pro bono. However, Mr. Gonzalez only learned of my case late last week, and has not had the opportunity to meet me in person with a Russian interpreter so that we can make his representation official."

The IJ denied the motion. He stated: "I saw you in court for the first time on December the 20th, 2017. I continued [your] case not once, but twice to give you a chance to look

---

[2] Contrary to the majority, the record does not state why the detainee prepared the application for Usubakunov, Majority at 7; nor is there any testimony from Usubakunov or other evidence in the record that Usubakunov needed to "focus on the paperwork" during the period a detainee was preparing his asylum application, Majority at 17 (cleaned up).

for an attorney. I continued your case not once, but twice to file your application for asylum. You have been . . . detained for over eight months. That's ample time to find an attorney. So, there's no good cause to continue your case any longer." In his subsequent written order, the IJ also noted that "the court ha[d] not received any notice from any attorney saying that they represent" Usubakunov. After hearing Usubakunov's testimony in support of his application for relief from removal, the IJ found Usubakunov not credible and denied his application.

The IJ's decision to deny a further 45-day continuance because Usubakunov had been given ample time to find counsel was well supported by the record. In sum, there were 113 days (75 working days) from the date Usubakunov first arrived in the country and was handed a list of legal services to the date the IJ proceeded with a hearing on whether Usubakunov was removable. This includes the IJ's grant of two continuances of 23 days (15 working days) and 28 days (19 working days) from the date of the initial hearing on December 20, 2017. After the IJ determined that Usubakunov was removable, Usubakunov had another 88 days (61 working days) to secure counsel in advance of the merits hearing on his asylum application. This includes the IJ's grant of two continuances of 28 days (19 working days) and 42 days (30 working days) to complete his asylum application (with or without assistance of counsel), followed by an additional 18 day period (12 working days) to find a lawyer. In total, 201 days (136 working days) elapsed from the date Usubakunov was given a list of legal services to the date of the merits hearing on his asylum application.

The BIA dismissed Usubakunov's appeal of the IJ decision, and Usubakunov petitioned for review. On appeal, Usubakunov does not challenge the absence of counsel at his

removal hearing.  Instead, he argues only that the IJ should have granted his request for an additional 45 days to secure representation at the merits hearing on his application for relief from removal.

## III

Our precedent requires us to defer to the IJ's reasonable determination that Usubakunov was not entitled to a further continuance.

Because "removal proceedings are civil," *Lara-Torres v. Ashcroft*, 383 F.3d 968, 973 (9th Cir. 2004), aliens "in removal proceedings have no Sixth Amendment right to counsel," *Nehad v. Mukasey*, 535 F.3d 962, 967 (9th Cir. 2008).  Rather, non-admitted aliens have a statutory right to counsel, 8 U.S.C. § 1362, that "stem[s] from the Fifth Amendment guarantee of due process," *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004).  But "[w]here an alien is given a full and fair opportunity to be represented by counsel, to prepare an application for [relief from removal], and to present testimony and other evidence in support of the application, he or she has been provided with due process." *Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 926–27 (9th Cir. 2007).

"Because non-admitted aliens are entitled only to whatever process Congress provides," *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011), the alien's right to counsel is limited to the rights provided by statute.  Section 1362 provides that an alien "[i]n any removal proceedings before an immigration judge" shall "have the privilege of being represented (at no expense to the Government) by . . . counsel." 8 U.S.C. § 1362.  We have interpreted this statutory right to require IJs to "provide aliens with reasonable time to locate counsel." *Biwot*,

403 F.3d at 1099. However, aliens who exercise this right may not, as the majority acknowledges, "unreasonably delay the administrative process." Majority at 12.

"No bright line guides our consideration of what constitutes reasonable time" for an alien to obtain counsel. *Biwot*, 403 F.3d at 1099. Rather, a reasonable time "is fact-specific and thus varies from case to case." *Id.* Under our precedent, we must defer to the IJ's discretionary decision of what is reasonable unless there is "a showing of clear abuse." *Id.* An abuse of discretion exists only when the agency's decision is "arbitrary, irrational, or contrary to law." *Gulla v. Gonzales*, 498 F.3d 911, 915 (9th Cir. 2007) (citation omitted).

A few examples show our application of this principle. We have held that an IJ did not abuse his discretion in denying a continuance where the detained alien had received a four-week continuance to obtain counsel and the IJ had put the alien on notice that there would be no further continuances. *Arrey v. Barr*, 916 F.3d 1149, 1158 (9th Cir. 2019). In another case where the alien at the deportation hearing "spoke English and was not incarcerated," we concluded that the IJ took reasonable steps to honor the alien's right to counsel by informing the alien of the right to counsel, asking if the alien wanted to find an attorney, granting a single one-week continuance, and providing a list of legal-services organizations in the area. *Moriel-Luna*, 585 F.3d at 1201–02; *see also Gonzalez-Veliz v. Garland*, 996 F.3d 942, 949 (9th Cir. 2021) (holding that the denial of the motion to continue was not an abuse of discretion where the non-detained alien had been given two months and knew the consequences of not obtaining counsel); *Vides-Vides v. INS*, 783 F.2d 1463, 1470 (9th Cir. 1986) (holding that there was no procedural due process violation where the alien had

been given four months and two continuances to obtain counsel). By contrast, we concluded that an IJ abused its discretion by failing to recognize that 12 days (which included a national holiday) was an "unrealistically short time" to find counsel. *Biwot*, 403 F.3d at 1099.

In this case, the IJ did not abuse his discretion by declining to grant Usubakunov's final request for an additional 45-day continuance. Provided with four continuances, Usubakunov had a total of 201 days to find counsel from the date he was first given a list of legal services to the date of the merits hearing on his asylum application. As the sequence of events make plain, the IJ exercised reasonable patience with Usubakunov and was far removed from any "myopic insistence upon expeditiousness." *Arrey*, 916 F.3d at 1158 (citation omitted). While due consideration must be given to the difficulties faced by a detained alien seeking to procure an attorney, there was nothing exceptional in the facts of this case that would make 201 days an unrealistically short length of time to secure counsel. Usubakunov had the same opportunity as other detained aliens to obtain counsel, and no unusual barriers stood in his way. He was given a list of legal service providers on two separate occasions and was free to hire any counsel of his choosing. There is no evidence in the record to support an inference that Usubakunov was indigent.

Moreover, the IJ had no reason to think that "Usubakunov was on the brink of obtaining counsel" if he were granted just one more continuance. Majority at 5. In his May 8 motion, Usubakunov said only that he was informed that a lawyer was "very likely" to represent him. He did not say he had retained a lawyer, and the IJ noted that no lawyer had agreed to represent Usubakunov or submitted

a notice of appearance. The record shows that Usubakunov had made similar representations before, and no counsel appeared at subsequent hearings. In January, Usubakunov told the IJ that his negotiations with attorneys were in place. No attorney appeared at the February hearing. In March he stated that he had sent his paperwork for his asylum application "to the attorneys" and they told him "it will be ready within the next couple of weeks." But when he next appeared before the IJ on April 20, his asylum application was completed not by his attorneys, but by another detainee at the Otay Mesa Detention Facility. Therefore, at the May 8 hearing, when Usubakunov stated that an attorney was "very likely" to represent him, but that there had been no "official" representation, the IJ could reasonably doubt that this further delay would lead to the retention of counsel. It was not irrational or arbitrary for the IJ to recognize that Usubakunov had been given a reasonable opportunity to obtain counsel and at some point the continuances must end in order to complete the necessary proceedings. *Cf. Vides-Vides*, 783 F.2d at 1470 (holding that an alien's "failure to obtain counsel after four months and two continuances makes apparent that he simply was unable to secure counsel at his own expense," and "[c]onsequently, the IJ had no option but to proceed to the hearing of evidence on the merits of the case"). IJs are "not obligated to grant indefinite continuances if [the alien] did not produce counsel." *Moriel-Luna*, 585 F.3d at 1201; *see also Montes-Lopez v. Holder*, 694 F.3d 1085, 1094 (9th Cir. 2012) ("It is not necessary to continue hearings indefinitely merely because an alien says that he or she cannot find counsel.").

IV

The majority directly contradicts this long-standing precedent. In reasoning that the IJ's denial of Usubakunov's

last-minute motion for a 45-day continuance was an abuse of discretion, Majority at 18, the majority effectively adopts a new principle that so long as a detained, non-English-speaking alien keeps filing motions for continuances to find counsel, the IJ is bound to grant such motions. Because no precedent of ours holds that an IJ's denial of a motion for yet another continuance under the circumstances here constitutes an abuse of discretion, the majority relies on an inapplicable out-of-circuit case, its own finding of facts, and its view of appropriate policy to conclude that the IJ abused his discretion when he denied Usubakunov's request for a fifth continuance.

First, in the absence of any Ninth Circuit support, the majority points to the First Circuit's decision in *Hernandez Lara v. Barr*, 962 F.3d 45 (1st Cir. 2020). But this reliance is misplaced. In that case, the alien had made an appearance with her attorney for the custody and bond proceeding. *Id.* at 48. The alien incorrectly believed the bond attorney would also represent her at the removal hearing. When she learned otherwise, she took reasonable steps to retain a new attorney. The IJ granted the alien several continuances while she was attempting to retain a new attorney. But after she retained one, the IJ refused to grant a further continuance to allow the newly retained attorney to obtain files from the bond counsel. *Id.* at 51.

The First Circuit held that the denial of this continuance was an abuse of discretion. First, the First Circuit concluded that the alien had only fourteen business days to find a lawyer "after she understood she needed a new one." *Id.* Therefore, "there was no justification for the IJ's denial of an additional continuance to allow the attorney now representing [the alien] to be present at a rescheduled merits hearing." *Id.* at 56. Second, the First Circuit concluded that

it "ma[de] no sense" for the IJ "to cut off Hernandez's access to an attorney whom *she had just retained*." *Id.* (emphasis added).

Contrary to the majority, Majority at 13–14, *Hernandez Lara* is not analogous to this case. While the alien in *Hernandez Lara* learned of her need to retain new counsel after proceedings had already commenced, Usubakunov was aware of his right to counsel from October 19, 2017, the day after he sought admission into the United States. The IJ again informed Usubakunov of his right to hire counsel on December 20, 2017, almost 20 weeks before the IJ denied Usubakunov's final motion for a continuance. Usubakunov did not think he was already represented, and so was not similarly situated to the alien in *Hernandez Lara*, who was confused about her representation. Moreover, while the IJ in *Hernandez Lara* denied the alien a continuance after she had retained counsel, Usubakunov had not retained any attorney. Although the majority claims that Usubakunov was "on the brink of obtaining counsel," and "on the verge" of having all the conditions to representation satisfied "when the IJ denied the continuance," Majority at 5, 15, the record shows no such thing.

In addition to relying on appellate fact-finding, the majority also invokes various policy concerns. Among other things, it discusses the difficulties imposed on aliens by removal, Majority at 10, and the value added by counsel in immigration proceedings, Majority at 11. The majority shares its research regarding the high need for legal services at Usubakunov's facility and contemplates the logistical difficulties faced by aliens seeking counsel. Majority at 14–15. Finally, it references Usubakunov's separation from his family members, and his assumed diligence in the light of such difficult circumstances. Majority at 16–17.

Clearly, the majority would have exercised its discretion to grant Usubakunov's request for a fifth continuance were it in the IJ's shoes. But this does not mean that the IJ's decision here to deny Usubakunov's request for an additional 45-day continuance was arbitrary, irrational, or contrary to law. On the contrary, there is no basis for holding that the IJ violated our caselaw or acted in an arbitrary or irrational manner in requiring Usubakunov to proceed with his asylum case 201 days after the Border Patrol first gave him a list of legal services. There are no unusual circumstances making the IJ's decision unreasonable; rather, the majority can point only to the common burdens imposed on aliens who enter the United States without valid entry documents and are in removal proceedings. Although the majority baldly claims that this case involves "unique circumstances," Majority at 18, Usubakunov's circumstances are commonplace: he was a detained, non-English-speaking alien who claims he had spoken to (but not retained) an attorney. Accordingly, we must defer to the IJ's exercise of discretion.

\*\*\*

The majority implicitly adopts a rule that all detained, non-English-speaking aliens subject to removal proceedings are entitled to continuances for as long as they request them and offer the name of a lawyer they would like to hire. But even the majority acknowledges that "we typically do not disturb an IJ's discretionary decision not to continue a hearing" unless there is "a showing of clear abuse," Majority at 12; *Biwot*, 403 F.3d at 1099 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)), and that "immigration courts bear a crushing caseload and an applicant cannot unreasonably delay the administrative process," Majority at 12. We should follow our existing rule and acknowledge that the IJ

here reasonably managed his docket by giving Usubakunov a reasonable opportunity to obtain counsel. Congress in no way intended for immigration proceedings to be indefinitely prolonged by way of 8 U.S.C. § 1362, and under our precedent, the IJ's denial of an additional continuance in Usubakunov's case was not arbitrary, irrational, or contrary to law. Therefore, I dissent.